**Elissa M. Boyd, OSB No. 111679**
Email: eboyd@chartwelllaw.com
**Sean W. Carney, OSB No. 054550**
Email: scarney@chartwelllaw.com
The Chartwell Law Offices, LLP
7700 NE Parkway Drive, Ste. 215
Vancouver, WA 98662
Telephone:     (503) 886-8108
Facsimile:     (503) 961-7864

*Attorneys for Plaintiff Golden Bear Insurance Company*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| GOLDEN BEAR INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>ACROPOLIS MCLOUGHLIN, INC. dba ACROPOLIS STEAKHOUSE, dba ACROPOLIS CLUB, and dba ACROPOLIS STEAK HOUSE PLUS, an Oregon corporation; and DIANE L. POLIZOS,<br><br>　　　　　Defendants. | Case No.: 3:24-cv-01861<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

COMES NOW Plaintiff Golden Bear Insurance Company ("Golden Bear"), by and through the below signed attorneys, and for its Complaint for Declaratory Judgment alleges and avers as follows:

**I.     PARTIES**

1.     Plaintiff Golden Bear is a California corporation with its principal place of business at Stockton, California. At all relevant times, Golden Bear was, and is now, authorized to do business in the State of Oregon.

PAGE 1 – COMPLAINT FOR DECLARATORY JUDGMENT

2.    Defendant Acropolis McLoughlin, Inc. ("Acropolis") is an Oregon corporation with its principal place of business in Portland, Oregon.

3.    On information and belief, Defendant Diane Polizos ("Ms. Polizos") is an Oregon citizen residing in Estacada, Oregon. On information and belief, Ms. Polizos is an owner and/or shareholder of Acropolis and owns the real property located at 8325 SE McLoughlin Boulevard, Portland, Oregon.

## II.    JURISDICTION

4.    This court has jurisdiction under 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in the District of Oregon, and/or the Defendants are subject to the Court's personal jurisdiction in the District of Oregon.

6.    An actual controversy exists between the parties regarding Golden Bear's duty to defend and the limits under the liquor liability policy that it issued to Acropolis in response to Acropolis' and Ms. Polizos' requests for defense and indemnity coverage from Golden Bear for certain claims asserted against them as more fully alleged herein.

7.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201(a), this Court has the power to declare all rights, duties, and obligations under an insurance policy, whether or not further relief is or could be sought.

## III.    BACKGROUND

8.    Golden Bear seeks a declaration that it has no duty to defend Defendants Acropolis and Ms. Polizos with respect to claims asserted against them in the lawsuits styled *Jesseye*

PAGE 2 – COMPLAINT FOR DECLARATORY JUDGMENT

*Arrambide, Personal Representative of the Estate of Adam David-Lawrence Arrambide, et al. v. Acropolis McLoughlin, Inc. dba Acropolis Club, and dba Acropolis Steak House Plus, et al.*, Multnomah County Circuit Court Case No. 23CV08304, and *Instrument Northwest, Inc., Personal Representative of the Estate of William T. Peters, et al. v. Acropolis McLoughlin, Inc. dba Acropolis Club and dba Acropolis Steak House Plus, et al.*, Multnomah County Circuit Court Case No. 23CV08378 (together, the "Underlying Lawsuits"). Golden Bear also seeks a declaration regarding its maximum limits under the potentially implicated policy of insurance.

9. The Underlying Lawsuits are alleged to arise out of the fatal shooting of Adam Arrambide ("Adam") and William Peters ("Mr. Peters") on February 27, 2021, in the parking lot of the Acropolis Steakhouse located at 8325 SE McLoughlin Boulevard, Portland, Oregon. Adam and Mr. Peters were allegedly patrons of the Acropolis with Mr. Peters' brother, Tyson Custer ("Mr. Custer") and Adam's brother, Arec Arrambide ("Arec"). The four men allegedly left the Acropolis Steakhouse and remained in the parking lot after the Acropolis had closed. Two individuals are alleged to have subsequently drove into the parking lot and exited their vehicles. An alleged altercation ensued and one of the individuals shot Adam and Mr. Peters. Adam and Mr. Peters died. The Acropolis Steakhouse allegedly was closed when the shootings occurred.

### IV. INSURANCE POLICY

10. Golden Bear issued Acropolis McLoughlin, Inc. dba: Acropolis Steakhouse liquor liability policy number GLL 03827, effective June 28, 2020 through June 28, 2021 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit A**.

11. The Policy provides liquor liability coverage in the amount of $1,000,000 each common cause and a $1,000,000 aggregate limit. In the event coverage is triggered but otherwise barred under the Policy by operation of the Policy's assault and battery exclusion, the Policy

PAGE 3 – COMPLAINT FOR DECLARATORY JUDGMENT

provides limited Assault & Battery Coverage, subject to a $25,000 limit for each common cause and a combined aggregate limit of $50,000.

12. The Policy affords coverage pursuant to its terms, conditions, limitations and exclusions.

13. The Policy's Liquor Liability Insuring Agreement states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages.

14. The Policy defines the terms "Injury" as follows:

> "Injury" means damages because of "bodily injury" and "property damage," including damages for care, loss of service or loss of support.

15. The Policy defines "Bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

16. The Policy contains an endorsement titled Exclusion-Assault & Battery, Form GBR 212 02/14, which provides in part:

> B. The following exclusion is added as an item to . . . the LIQUOR LIABILITY COVERAGE PART, SECTION I - LIQUOR LIABILITY COVERAGE, 2. Exclusions:
>
> This insurance does not apply to claims or "suits" to recover damages for "bodily injury," or "property damage," "personal and advertising injury," or medical payments arising from any of the following acts, allegations, or causes of action:
>
> 1. Assault;
>
> 2. Battery;
>
> 3. Harmful or offensive contact between or among two or more persons;
>
> 4. Apprehension of harmful or offensive contact between or among two or more persons;

PAGE 4 – COMPLAINT FOR DECLARATORY JUDGMENT

\*       \*       \*

> 11. Negligent maintenance of the premises resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
>
> 12. Any actual or alleged failure to prevent, halt, or bar any act identified in 1-6 above, or
>
> 13. Indemnity for any act identified in 1-6 above.
>
> The above acts, allegations, or causes of action shall not be deemed an "occurrence" and we have no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:
>
> 1. Whether damages sought are for "bodily injury," "property damage," "personal injury," or "advertising injury";
>
> 2. The intent or culpability of an insured, an employee, or "third party";
>
> 3. Whether the claim, demand, or suit alleges that an insured acted directly or indirectly to cause damage;
>
> \*       \*       \*
>
> C. This exclusion also applies to any claims, demands, or suits by any other person, firm, estate, entity or organization asserting rights derived from, or contingent upon, any person asserting a claim excluded by Section B, items 1-13 above.
>
> D. This exclusion applies to all damages to persons or property, regardless of the damages alleged, claimed, stipulated or awarded, including costs and fees.
>
> As defined in this exclusion, "third party" shall mean agents, independent contractors, sub-contractors, patrons, customers, lessors or lessees, security personnel, or any other persons lawfully or unlawfully on the insured's designated premise.

17. The Policy also contains an endorsement titled Limited Assault & Battery Coverage, form GBR 302 02/14, which states:

> A. The specific coverage excluded under GBR 212 (02/14) is reinstated subject to the following terms, conditions and the limits of insurance stated below.
>
> 1. We will pay no more than the applicable limit set forth below for sums that the insured becomes legally obligated to pay as damages

  because of "bodily injury" or "property damage" for coverage excluded under GBR 212 (02/14). The applicable limit in this form is the most we will pay regardless of:

  i. The amount of any demand for indemnity;

  ii. The number of insureds;

  iii. The number of claims or "suits" brought against you, or

  iv. The limits stated in the Declarations.

B. Limits:

| | |
|---|---|
| Commercial General Liability Assault & Battery Each "Occurrence" Limit | Not Covered |
| Liquor Liability Assault & Battery Each "Common Cause" Limit | $25,000 |
| "Combined Assault & Battery Aggregate Limit" | $50,000 |

The limits above are not in addition to the limits stated in the Declarations. However, any indemnity payment made pursuant to this endorsement will reduce the applicable Limit of Insurance shown in the Declarations.

The "Combined Assault & Battery Aggregate Limit" is the most we will pay for coverage under this endorsement regardless of the number of claims or "suits" brought against you arising out of more than one "occurrence" and/or "common cause."

"Common Cause" means any claim, demand, or "suit" for injuries sustained by one or more persons as a result of the providing of alcoholic beverages.

All other terms, conditions, exclusions, limitations and definitions of this policy remain in full force and unchanged.

18. The Policy contains various other exclusions, conditions, endorsements, and limitations.

## V. UNDERLYING LAWSUITS

19. Arec and the Arrambide Estate filed suit on February 24, 2023, against Acropolis and Ms. Polizos for negligence, the wrongful death of Adam, and the emotional distress of Arec

(the "Arrambide Lawsuit"). An amended complaint was filed on October 2, 2023. A true and correct copy of the amended complaint in the Arrambide Lawsuit is attached hereto as **Exhibit B**.

20. A separate lawsuit was filed against Acropolis and Ms. Polizos on February 27, 2023, by Mr. Custer and the Peters Estate for negligence, the wrongful death of Mr. Peters, and the emotional distress of Mr. Custer (the "Peters Lawsuit"). The complaint was amended on September 25, 2023. A true and correct copy of the amended complaint in the Peters Lawsuit is attached hereto as **Exhibit C**.

21. Arec, Mr. Custer, the Arrambide Estate, and the Peters Estate (the "Underlying Plaintiffs") allege that, on the night of February 27, 2021, Adam and Arec and Messrs. Peters and Custer met at the Acropolis Steakhouse where Mr. Peters became overly intoxicated. The Underlying Plaintiffs allege that the Acropolis closed at 11:00 pm, and the four men relocated to the parking lot. They claim that as the group stood around chatting, two vehicles pulled into the parking lot and two "unknown men" exited the vehicles.

22. The Underlying Plaintiffs claim that Mr. Peters engaged with the men, the interaction quickly escalated, and one of the men from the vehicles began shooting, resulting in the death of Mr. Peters and Adam. Arec and Mr. Custer were physically unharmed, but both allegedly witnessed the shooting and feared for their own lives.

23. The Underlying Plaintiffs assert premises and liquor liability claims against Acropolis and allege that Acropolis failed to provide reasonably safe premises and negligently overserved Mr. Peters.

24. The Underlying Plaintiffs also assert premises liability claims against Ms. Polizos and allege that Ms. Polizos failed to provide reasonably safe premises.

25. The Underlying Plaintiffs seek damages in excess of $75,000 from Acropolis and Ms. Polizos.

26. Acropolis reported the shooting incident to Golden Bear, which Golden Bear acknowledged in various correspondence. Once the Underlying Lawsuits were filed, Golden Bear agreed to provide a defense to Acropolis and Ms. Polizos, subject to a full and complete reservation of rights.

27. More specifically, on March 28, 2023, Golden Bear issued a reservation of rights letter wherein Golden Bear reserved all rights and defenses to limit or disclaim coverage under the Policy.

28. Golden Bear also reserved the right in its March 28, 2023 correspondence to disclaim coverage under the Policy to the extent the Underlying Plaintiffs' damages were not caused by the selling, serving or furnishing of any alcoholic beverage. Golden Bear also reserved the right limit potentially available coverage pursuant to the Policy's Limited Assault & Battery Coverage endorsement and the $25,000 Each "Common Cause" Assault & Battery limit. A true and correct copy of Golden Bear's March 28, 2023 reservation of rights letter is attached hereto as **Exhibit D**.

29. There are other provisions of the Policy that may apply to limit or preclude coverage for Acropolis and Ms. Polizos. Golden Bear reserves the right to assert additional bases for declaratory judgment under the attached Policy.

## VI.   CAUSES OF ACTION

### COUNT 1 - DECLARATORY RELIEF – DUTY TO DEFEND - ACROPOLIS

30. Golden Bear re-alleges paragraphs 1 through 29 as if fully set forth here.

31. An actual and justiciable controversy exists between Golden Bear and Acropolis within the meaning of 28 U.S.C. § 2201 with respect to whether Golden Bear has a duty to defend Acropolis under the Policy's terms and applicable law.

32. Acropolis contends that the Policy provides a duty to defend for the Underlying Lawsuits. Golden Bear contends that the duty to defend is barred by the terms of the Policy.

33. Golden Bear seeks a declaration that the Policy affords no duty to defend Acropolis for the claims asserted against it in the Underlying Lawsuits.

34. There is no duty to defend Acropolis under the Policy because the Underlying Lawsuits do not allege damages sought to be imposed on Acropolis for "injury" because of Acropolis' sale, service, or furnishing of alcohol and, therefore, the insuring agreement in the Policy is not satisfied.

35. There are no allegations in the Underlying Lawsuits that the individual that shot Adam and Mr. Peters was ever a patron of the Acropolis. There also are no allegations in the Underlying Lawsuits that the individual that shot Adam and Mr. Peters was ever sold, served or furnished alcohol by Acropolis. The Underlying Lawsuits instead allege only a superseding act by a third party that is not alleged to have resulted from Acropolis' sale, service, or furnishing of alcohol. In order for a duty to defend to arise, the sale, service, or furnishing of alcohol itself must cause the injury – not merely expose Adam and Mr. Peters to potential injury by a third party. The Underlying Lawsuits allege injury resulting only from a third party's superseding act and not Acropolis' sale, service, or furnishing of alcohol.

36. Likewise, there are no allegations in the Underlying Lawsuits that the shootings of Adam and Mr. Peters that allegedly caused Mr. Custer and Arec emotional distress were perpetrated by any patron of the Acropolis. There also are no allegations in the Underlying

Lawsuits that the individual that shot Adam and Mr. Peters allegedly causing Mr. Custer and Arec emotional distress were ever sold, served or furnished alcohol by Acropolis. The Underlying Lawsuits instead allege only a superseding act by a third party that is not alleged to have resulted from Acropolis' sale, service, or furnishing of alcohol. In order for a duty to defend to arise, the sale, service, or furnishing of alcohol itself must cause the injury – not merely expose Mr. Custer and Arec to potential injury resulting from a third party's conduct. The Underlying Lawsuits clearly allege injury resulting only from a third party's superseding act and not Acropolis' sale, service, or furnishing of alcohol.

37. A judicial declaration is necessary and appropriate at this time regarding the duty to defend so that Golden Bear can ascertain its duties under the Policy.

**COUNT 2 - DECLARATORY RELIEF – DUTY TO DEFEND – MS. POLIZOS**

38. Golden Bear re-alleges paragraphs 1 through 29 as if fully set forth here.

39. An actual and justiciable controversy exists between Golden Bear and Ms. Polizos within the meaning of 28 U.S.C. § 2201 with respect to whether Golden Bear has a duty to defend her under the Policy's terms.

40. Ms. Polizos contends that the Policy provides a duty to defend for the Underlying Lawsuits. Golden Bear contends that the duty to defend is barred by the terms of the Policy.

41. Golden Bear seeks a declaration that the Policy affords no duty to defend Ms. Polizos for the claims asserted against her in the Underlying Lawsuits.

42. There is no duty to defend Ms. Polizos under the Policy because the Underlying Lawsuits do not allege damages sought to be imposed on Ms. Polizos for "injury" because of Acropolis' sale, service, or furnishing of alcohol and, therefore, the insuring agreement in the Policy is not satisfied.

43. There are no allegations in the Underlying Lawsuits that the individual that shot Adam and Mr. Peters was ever a patron of the Acropolis or guest of Ms. Polizos. There also are no allegations in the Underlying Lawsuits that the individual that shot Adam and Mr. Peters was ever sold, served or furnished alcohol by Acropolis or Ms. Polizos. The Underlying Lawsuits instead allege only a superseding act by a third party that is not alleged to have resulted from Ms. Polizos' sale, service, or furnishing of alcohol. In order for a duty to defend to arise, the sale, service, or furnishing of alcohol itself must cause the injury – not merely expose Adam and Mr. Peters to potential injury by a third party. The Underlying Lawsuits clearly allege injury resulting only from a third party's superseding act and not Ms. Polizos' sale, service, or furnishing of alcohol.

44. Likewise, there are no allegations in the Underlying Lawsuits that the shootings of Adam and Mr. Peters that allegedly caused Mr. Custer and Arec alleged emotional distress were perpetrated by a patron of the Acropolis or guest of Ms. Polizos. There also are no allegations in the Underlying Lawsuits that the individual that shot Adam and Mr. Peters causing Mr. Custer and Arec alleged emotional distress were ever sold, served or furnished alcohol by the Acropolis or Ms. Polizos. The Underlying Lawsuits instead allege only a superseding act by a third party that is not alleged to have resulted from Ms. Polizos' sale, service, or furnishing of alcohol. In order for a duty to defend to arise, the sale, service, or furnishing of alcohol itself must cause the injury – not merely expose Mr. Custer and Arec to potential injury by a third party. The Underlying Lawsuits clearly allege injury resulting only from a third party's superseding act and not Ms. Polizos' sale, service, or furnishing of alcohol.

45. A judicial declaration is necessary and appropriate at this time regarding the duty to defend so that Golden Bear can ascertain its duties under the Policy.

PAGE 11 – COMPLAINT FOR DECLARATORY JUDGMENT

**COUNT 3 - DECLARATORY RELIEF – LIMITS – ACROPOLIS AND MS. POLIZOS**

46.     Golden Bear re-alleges paragraphs 1 through 45 as if fully set forth here.

47.     Without prejudice to any other declaratory relief sought herein, Golden Bear also seeks a declaration that the maximum indemnity limit under the Policy for all damages as pled in the Underlying Lawsuits is limited to the $25,000 "Common Cause" Assault and Battery Sublimit by operation of the Policy's Exclusion-Assault & Battery endorsement and Limited Assault & Battery Coverage endorsement, to the extent indemnity coverage is otherwise triggered under the terms of the Policy.

48.     Acropolis and Ms. Polizos contend that the single $25,000 "Common Cause" Assault and Battery Sublimit does not apply to the damages alleged in the Underlying Lawsuits. Golden Bear takes the position that the $25,000 "Common Cause" Assault and Battery Sublimit is the maximum amount of any indemnity obligation for damages alleged in the Underlying Lawsuits.

49.     An actual and justiciable controversy exists as to whether the $25,000 "Common Cause" Assault and Battery Sublimit is the maximum amount of any indemnity obligation for damages alleged in the Underlying Lawsuits.

50.     The damages sought in the Underlying Lawsuits seek recovery for the death of Mr. Peters and Adam and emotional distress related to these deaths, all of which arise from the unlawful application of force to, and harmful or offensive contact of, Mr. Peters and Adam and, therefore, the maximum limits of indemnity under the Policy are the single $25,000 "Common Cause" Assault and Battery Sublimit by operation of the Policy's Exclusion-Assault & Battery endorsement and Limited Assault & Battery Coverage endorsement.

51.     The amount and extent of the alleged damages as a result of the Underlying Lawsuits is unknown at this time, but the amount pled exceeds the single $25,000 "Common Cause" Assault and Battery Sublimit.

52.     Golden Bear does not seek to litigate whether or to what extent Acropolis and Ms. Polizos may have liability with respect to the Underlying Lawsuits.

53.     Golden Bear also does not take any position as to which party(ies), if any, may be entitled to the $25,000 "Common Cause" Assault and Battery Sublimit, or the amount to which any particular party may be entitled.

54.     Regardless of what damages may or may not be awarded in the Underlying Lawsuit, and regardless of any liability facts, all relief that could potentially be awarded based on the matters pled in the Underlying Lawsuits does not exceed the single $25,000 "Common Cause" Assault and Battery Sublimit by operation of the Policy's Exclusion-Assault & Battery endorsement and Limited Assault & Battery Coverage endorsement.

55.     Golden Bear asks that the Court to grant declaratory relief by entering a judicial determination that Golden Bear's maximum indemnity limits for all potential damages as pled in the Underlying Lawsuits shall not exceed the single $25,000 "Common Cause" Assault and Battery Sublimit by operation of the Policy's Exclusion-Assault & Battery endorsement and Limited Assault & Battery Coverage endorsement, to the extent indemnity coverage is otherwise triggered under the terms of the Policy.

### VII.     PRAYER FOR RELIEF

WHEREFORE, Golden Bear respectfully prays for a declaration from this Court that:

(a)     Golden Bear is not obligated under the Policy to further defend Acropolis against the claims asserted in the Underlying Lawsuits and may withdraw;

(b) Golden Bear is not obligated under the Policy to further defend Ms. Polizos against the claims asserted in the Underlying Lawsuits and may withdraw;

(c) Golden Bear's maximum indemnity limits for all potential damages as pled in the Underlying Lawsuits shall not exceed the single $25,000 "Common Cause" Assault and Battery Sublimit by operation of the Policy's Exclusion-Assault & Battery endorsement and Limited Assault & Battery Coverage endorsement, to the extent indemnity coverage is otherwise triggered under the terms of the Policy; and

(d) Golden Bear is entitled to such other relief as the Court may deem just and proper.

DATED this 8th day of November, 2024.

THE CHARTWELL LAW OFFICES, LLP

By /s/ Elissa M. Boyd
**Elissa M. Boyd, OSB No. 111679**
Email: eboyd@chartwelllaw.com
**Sean W. Carney, OSB No. 054550**
Email: scarney@chartwelllaw.com
7700 NE Parkway Drive, Ste. 215
Vancouver, WA 98662
Telephone:   (503) 886-8108
Facsimile:   (503) 961-7864

*Attorneys for Plaintiff Golden Bear Insurance Company*